NATIONAL LIFE & ACCIDENT INSURANCE COMPANY
v. HORACE.

4-7172 .175 S. W. 2d 984

Opinion delivered December 6, 1943.

*Barber, Henry & Thurman,* for appellant.

*Talley, Owen & Talley,* for appellee.

SMITH, J. The appellant insurance company issued a policy of insurance to appellee, which provided for the payment of $120 cash to appellee upon attaining the age of 70, or of paying that sum to his beneficiary upon his prior death, provided the premiums were paid.

In addition, the policy contained a paragraph reading as follows:

"(C) If the insured shall lose, by severance, both hands at or above the wrist, or both feet at or above the ankle, or one hand and one foot at or above the wrist and ankle, or permanently lose the sight of both eyes, or per-

manently lose the faculties of both speech and hearing; or, within ninety (90) days thereafter, die as a result of accidental injuries sustained while riding as a regular passenger within any public conveyance operated for the transportation of passengers, this policy shall thereupon mature and the company shall pay double the amount of the endowment insurance shown in the schedule on page four ($120). The loss of one member as aforesaid shall likewise mature the policy and the company shall pay one-half the benefit payable for loss of two members. The payment of such sum, without deduction for any weekly indemnity previously paid, shall terminate this policy and fully discharge all liability thereunder.''

This litigation turns upon the construction to be given the last sentence of the paragraph just quoted.

It is stipulated that appellee, the insured, was thrown from a train, in or near St. Louis, Missouri, on May 29, 1942, and sustained an injury which necessitated the amputation of his right leg above the knee, that operation being performed on the day of the injury.

On June 5, 1942, there was received at the Little Rock office of the insurance company ''proof of claim'' provided for and required by the policy, which recited that the insured ''had sustained a fracture of the pubic bone.'' This claim was signed by the surgeon who had performed the operation. A similar claim was filed with the Little Rock office on June 12, 1942, another on June 19, 1942, and on June 30, 1942, a fourth claim for the same injury was filed, which reported the amputation of appellee's leg.

None of these claims was paid until July 2, 1942, although all of them recited that appellee had sustained an injury which had permanently disabled him, thereby entitling him to receive a disability benefit of $8 per week, under the terms of the insurance policy. On the date just mentioned an agent of the insurance company called upon the insured at the hospital in St. Louis, where he was confined, at which time the agent ascertained that appellee had lost his leg, and the agent of the insurance company then paid appellee the amount of the four claims filed with the Little Rock office.

Subsequent to the filing of these four claims, four others for similar disability benefits were filed on the following dates: July 3rd, July 10th, July 20th and July 28th. These were all paid as follows: two of them on July 20th, one on July 28th, and the other on August 4th, all in 1942.

On August 14th a claim was filed for the benefits provided by paragraph "C" of the policy, above copied. Upon receipt of this claim the insurance company advised the insured that upon the amputation of his leg his policy had matured for the full face value thereof, in the sum of $120. A credit for the eight weekly payments of $8 each, totaling $64, was asserted, and a tender of $56 was made in complete settlement of all benefits due the insured under his policy, which tender was refused.

A suit was filed by the insured in the Little Rock municipal court on September 11, 1942, in which it was alleged that six weekly payments of benefits had accrued and matured, which had not been paid, and judgment for $48, the total thereof, was prayed, together with the statutory penalty of 12 per cent., and an attorney's fee. A tender in court of $56 was made by the insurance company, which was refused, whereupon judgment was rendered in favor of the insured for $56, without allowance of penalty or attorney's fee, and from that judgment the insured appealed to the circuit court, where the case was tried upon an agreed statement reciting the facts to be as herein set forth.

The trial in the circuit court was before the judge, sitting as a jury, where it was found and adjudged:

"That the plaintiff is not entitled to recover against the defendant on the allegations contained in his complaint, but the court after being advised as to the facts arising in the premises treats the plaintiff's complaint as amended to conform to the proof, and finds that after the defendant, The National Life & Accident Insurance Company, had ascertained that as a result of the accident on May 29, 1942, the plaintiff, Roy E. Horace, sustained the amputation of his right leg, said defendant paid to the said Roy E. Horace eight weekly payments pursuant

to the proofs submitted by him, or the sum of sixty-four and no/100 dollars ($64); that said defendant is not entitled to a credit of the said sixty-four and no/100 dollars ($64), same being voluntary payments by it to plaintiff, after actual notice to it of the true injury to plaintiff's leg, but is now indebted to the said plaintiff in the sum of one hundred twenty and no/100 dollars ($120), the amount provided in said policy for the loss of said leg, such payment to be exclusive of the sixty-four and no/100 dollars ($64) theretofore paid in eight weekly installments.''

The claim for the statutory penalty and attorney's fee was disallowed, and from that judgment the insurance company has appealed to this court, and appellee has perfected a cross-appeal.

We think the court below correctly construed and applied the last sentence of paragraph ''C'' of the policy. The insured had sustained an injury which entitled him to the full endowment insurance, as it is called in the policy, which was $120, and the insurer had the right to pay that sum upon being advised as to the facts in full acquittance of its liability under the policy. We can only conjecture why it did not pay that amount, but, in any event, it did not do so. On the contrary, after being advised of the insured's injury and disability, it made the various payments of weekly benefits set out above, and the policy provides that when the company liquidates its liability by payment of the full endowment value of the policy, any weekly benefit previously paid shall not be deducted.

It is insisted that the policy should not be so construed, and that it was intended only that deductions should not be made of weekly benefits paid before the insured became permanently disabled, and that here there was only one injury and one disability—the amputation being the disability—that there was no period of disability, followed by the amputation, but an amputation, followed by disability.

If it be admitted that the policy is susceptible to this construction, it must also be admitted that this is not the

only construction to which it is reasonably susceptible. The policy is ambiguous, to say the least of it, and the rule of construction followed by this court in many cases is to resolve ambiguous and doubtful language in favor of the insured, and against the insurer. One of the latest cases to this effect is *Equitable Life Assur. Society* v. *Bruce*, 203 Ark. 543, 157 S. W. 2d 522.

The policy permitted the insurer to liquidate its liability by paying $120, the endowment value, but it provides for the payment of such sum "without deduction for any weekly indemnity previously paid." If it were intended to exclude from deduction only those benefits paid for a prior injury or disability, that fact could easily and clearly have been stated; but it is not. On the contrary, the policy provides for its liquidation, if and when the company does liquidate it, without deduction for benefits previously paid.

The judgment will, therefore, be affirmed on the direct appeal, and it will also be affirmed upon the cross-appeal, for the reason stated in the judgment, from which comes both the direct and cross-appeal, that the insured was not entitled to continue to demand payment of weekly benefits and thus deprive the insurance company of the right to liquidate the policy, by paying a sum which, if it had been paid before paying any of the weekly benefits, would have defeated the right to recover, even those which were paid. Judgment affirmed.

GRIFFIN SMITH, C. J., concurs.